1
2
3
4
5
6
7
8    **UNITED STATES DISTRICT COURT**
9    **CENTRAL DISTRICT OF CALIFORNIA**
10
11   JOSE M. U. V.,                    )    NO. ED CV 19-269-E
                                       )
12              Plaintiff,             )
                                       )
13        v.                           )    **MEMORANDUM OPINION**
                                       )
14   ANDREW SAUL, Commissioner of      )    **AND ORDER OF REMAND**
     Social Security,                  )
15                                     )
                Defendant.             )
16   _____    )
17
18        Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS
19   HEREBY ORDERED that Plaintiff's and Defendant's motions for summary
20   judgment are denied, and this matter is remanded for further
21   administrative action consistent with this Opinion.
22
23                        **PROCEEDINGS**
24
25        Plaintiff filed a complaint on February 10, 2019, seeking review
26   of the Commissioner's denial of benefits.  The parties consented to
27   proceed before a United States Magistrate Judge on March 12, 2019.
28   Plaintiff filed a motion for summary judgment on July 29, 2019.

Defendant filed a motion for summary judgment on August 28, 2019.  The Court has taken the motions under submission without oral argument. <u>See</u> L.R. 7-15; "Order," filed February 25, 2019.

## BACKGROUND

Plaintiff applied for disability insurance benefits, asserting disability since February 7, 2011, the time of a work-related back injury (Administrative Record ("A.R.") 44, 174, 201, 277, 292). Plaintiff alleges he suffers from, <u>inter alia</u>, low back pain, spondylosis, arthritis, stomach hernias and bone spurs on his left foot.  <u>Id.</u>  Plaintiff claims that his conditions limit his ability to reach, sit for "much time" or walk for more than 30 minutes (A.R. 201).

As detailed below, Plaintiff underwent spine fusion surgery in January of 2013 and again in September of 2014 (A.R. 563-613, 680-89). Between the first and second surgeries, treating orthopedist Dr. John Steinmann opined that Plaintiff regained the ability to work, limited to the lifting of no more than 15 pounds (prior to December, 2013) and the lifting of no more than 30 pounds (as of December, 2013) (A.R. 824, 827, 835).  By April of 2014, Plaintiff's condition reportedly had deteriorated, however, and Dr. Steinmann requested approval for a second surgery (A.R. 940).  After the second surgery, Dr. Steinmann opined that Plaintiff regained the ability to do only "sedentary" work (A.R. 924, 928, 933).  Dr. Steinmann defined "sedentary" work as lifting no more than 10 pounds.  <u>Id.</u>
///

An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 33-60). Plaintiff testified to pain and limitations of allegedly disabling severity (A.R. 45-53). The ALJ found that, through Plaintiff's December 31, 2016 date last insured, Plaintiff had severe degenerative disc disease of the lumbar spine, status post fusion surgeries, H. pylori and major depressive disorder (A.R. 12). However, the ALJ also found that, through the date last insured, Plaintiff retained a residual functional capacity for light work,[1] limited to: (1) occasionally pushing and pulling with the lower extremities; (2) occasionally climbing ramps and stairs, but never climbing ladders or scaffolds; (3) occasionally balancing, stooping, kneeling, crouching and crawling; (4) avoiding concentrated exposure to vibration and hazards; and (5) only unskilled work[2] with occasional contact with co-workers and no public contact. See A.R. 15-19 (giving "great weight" to the consultative examiners' opinions, "limited weight" to the state agency physicians' opinions, and rejecting Dr. Steinmann's opinions regarding sedentary limitations).

The ALJ identified certain light jobs Plaintiff assertedly could perform, and, on that basis, denied disability benefits (A.R. 20-21

///

---

[1]    Light work requires lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking up to six hours in an eight-hour day and sitting up to six hours in an eight hour day.  See 20 C.F.R. § 404.1567(b).

[2]    Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568.

(adopting vocational expert testimony at A.R. 53-55)).[3]  The Appeals
Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the
Administration's decision to determine if: (1) the Administration's
findings are supported by substantial evidence; and (2) the
Administration used correct legal standards.  See Carmickle v.
Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,
499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner,
682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such
relevant evidence as a reasonable mind might accept as adequate to
support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401
(1971) (citation and quotations omitted); see also Widmark v.
Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

If the evidence can support either outcome, the court may
not substitute its judgment for that of the ALJ.  But the
Commissioner's decision cannot be affirmed simply by
isolating a specific quantum of supporting evidence.
Rather, a court must consider the record as a whole,

---

[3]    At the time of the hearing, Plaintiff was 52 years old
and had not graduated from high school, but had attended college
classes (A.R. 39-40).  If Plaintiff were limited to sedentary
work and had no transferrable skills, or if Plaintiff's education
does not provide for direct entry into skilled work, Plaintiff
would be disabled under the Grids.  See 20 C.F.R. Pt. 404, Subpt.
P. App. 2 ("Grids") §§ 201.12, 201.14; see also Cooper v.
Sullivan, 880 F.2d 1152, 1157 (9th Cir. 1989) (a conclusion of
disability, directed by the Grids, is irrebuttable).

weighing both evidence that supports and evidence that
detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and
quotations omitted).

**DISCUSSION**

After consideration of the record as a whole, the Court reverses
the Administration's decision in part and remands the matter for
further administrative proceedings.  As discussed below, the
Administration materially erred in evaluating the evidence of record.

**I.    Summary of Relevant Evidence**

**A.    Plaintiff's Testimony and Statements**

At the administrative hearing, Plaintiff testified that he
injured himself at work while lifting a 180-pound box which caused a
"pop" in his back (A.R. 44).  Plaintiff had undergone two back
surgeries, physical therapy, epidural injections and other management
for his back pain (A.R. 45-46, 52-53).  Plaintiff's surgeon advised
that there was nothing more the surgeon could do for him (A.R. 44).
Plaintiff testified that he has pain in his low back every four hours,
for which he has to take pain medication or lie down, which resolves
the pain only temporarily (A.R. 45-46, 52).  Plaintiff was taking
Gabapentin and 800 milligram ibuprofen (A.R. 49).
///

Plaintiff testified that he could walk for five to 10 minutes at one time without a problem, could lift up to a gallon of milk, has difficulty sitting due to pressure on his back, and regularly has used a cane since his first back surgery in 2013 because he is afraid he might trip on something (A.R. 46-47, 51-52).[4]

## B. <u>Records of Treatment for Plaintiff's Back Injury</u>

Plaintiff injured his back at work on December 13, 2010 and again on February 7, 2011 (A.R. 252, 304, 320, 1100-01). A March, 2011 lumbar spine MRI showed lumbar spondylosis at L3-L4, L4-L5 and L5-S1, degenerative retrolisthesis of L5 on S1 with a 5-millimeter posterior osteophyte extending into the neural foramina, and small posterior osteophytes at L3-L4 and L4-L5 (A.R. 257-58). In March of 2011, Plaintiff's doctor requested approval for an epidural injection at the L5 level for lumbar muscle strain and spasm and lumbar radiculopathy (A.R. 284). Plaintiff reportedly had failed conservative management (<u>i.e.</u>, physical therapy, work modification, medications, Medrol Dosepak and trigger point injections) (A.R. 284).[5]

///

---

[4]     Plaintiff testified that, on a typical day, he gets up, takes 20 minutes to dress, prepares breakfast, takes a pain pill, sits for an hour to an hour and a half, walks for five to 10 minutes, and then lies down (A.R. 47). Plaintiff said he sometimes needs help tying his shoes, does no chores at home, accompanies his wife to grocery shop, and can travel to see family and friends in Rialto or Fontana (A.R. 48). Plaintiff attends church on Sundays and sits where he can move around or stand up (A.R. 47).

[5]     A May, 2011 nerve conduction study was normal (A.R. 362-66).

In August, October, and November of 2011 and in January of 2012, Plaintiff went to the emergency room for his back pain, reporting that his pain medication (Vicodin and Naprosyn) was not effective (A.R. 368-80, 434-38, 784-90). Plaintiff was given Toradol and Morphine injections. Id. Plaintiff had been given a L5 lumbar epidural steroid injection two days before his January, 2012 visit, and reported that the injections gave him no relief (A.R. 376, 434; see also A.R. 312-15 (records for epidurals given in December of 2011 and January of 2012)).

On August 10, 2012, Plaintiff consulted with worker's compensation orthopedic surgeon Dr. John Steinmann, complaining of aching lumbar pain radiating to the bilateral legs, with numbness, tingling and weakness, aggravated by walking, lifting or standing and alleviated by rest or lying down (A.R. 528-29). Plaintiff was taking Naproxen, Vicodin and Cephalexin (A.R. 529). On examination, Plaintiff reportedly ambulated with a normal gait without an assistive device, transferred from chair to standing and to the exam table with apparent "ease," but there was "moderate discomfort demonstrated," and Plaintiff had limited range of motion in the lumbar spine with positive Gower sign (A.R. 532-33). A MRI study reportedly showed advanced degenerative changes at L5-S1 (A.R. 534). Dr. Steinmann diagnosed low back pain emanating from L5-S1 due to a lesion capable of rendering Plaintiff's back weak and chronically painful, and Dr. Steinmann recommended L5-S1 fusion surgery with a request for second opinion (A.R. 534). Dr. Steinmann found Plaintiff temporarily totally disabled (A.R. 534).
///

Plaintiff followed up with Dr. Steinmann on September 20, 2012, reporting that he had gone to the emergency room for pain medication on August 24, 2012 (A.R. 536-37). Dr. Steinmann again requested a second opinion for the proposed surgery (A.R. 538). When Plaintiff returned on October 29, 2012, he reported that his pain had gotten worse and was excruciating and constant (A.R. 540). Plaintiff had received a second opinion from Dr. Robert Horner, who agreed with the proposed surgery, and so Dr. Steinmann requested approval for the surgery (A.R. 541-42). Plaintiff returned on December 17, 2012, to refill his Norco prescription pending the scheduled surgery (A.R. 543-45).

On January 16, 2013, Plaintiff underwent spinal diskectomy and fusion surgery at L5-S1 by Dr. Joseph Vanderlinden, with the assistance of Dr. Steinmann (A.R. 563-607). Plaintiff returned to Dr. Steinmann for a post-operative appointment on January 31, 2013, reporting low back pain radiating to his buttocks and pain at the surgical incision site (A.R. 546). Dr. Steinmann described Plaintiff as "doing very well" and using a walker for ambulation (A.R. 547). When Plaintiff returned on February 28, 2013, Dr. Steinmann discontinued the use of Plaintiff's walker, referred him for "aggressive" physical therapy and continued his disability status (A.R. 549-50).

On March 16, 2013, Plaintiff complained of increased lower back pain and bilateral leg pain and reportedly had not started physical therapy because the therapy had not been authorized (A.R. 553-54). Plaintiff reportedly did not feel that he was "tremendously better"

than he was before surgery (A.R. 554).  Dr. Steinmann described
Plaintiff's progress as "slow" and noted that he would have expected
significant improvement by then (A.R. 554).  Dr. Steinmann prescribed
Vicodin and Celebrex (A.R. 554).[6]

On April 20, 2013, Plaintiff reported significant pain in his low
back and hips, as well as numbness in his left great toe (A.R. 560-
61).  Dr. Steinmann described Plaintiff as better than he had been
before surgery (A.R. 561).  Dr. Steinmann then opined that Plaintiff
was capable of lifting no more than 15 pounds with no repetitive
bending or stooping (A.R. 561).  On May 23, 2013, however, Plaintiff
reported continued, intolerable pain in his low back and hips
radiating to his left foot (A.R. 818-19).  On examination, Plaintiff
had restricted range of motion (A.R. 819).  Dr. Steinmann requested a
CT scan to evaluate the source of Plaintiff's pain (A.R. 819).

On July 11, 2013, Plaintiff returned to Dr. Steinmann complaining
of back and leg pain which reportedly was "much better" than before
his back surgery but still precluded normal activity (A.R. 822).  On
examination, Plaintiff reportedly ambulated normally without assistive
device, with "ease" but "mild to moderate discomfort demonstrated" on
transfers from chair to standing and to the examination table,
tenderness on lumbosacral palpation, and limited lumbar range of
motion (A.R. 822-23).  A CT scan reportedly showed left pedicle screws

---

[6]     On March 27, 2013, Plaintiff had a physical therapy
evaluation which reported significant movement dysfunction and
moderate soft tissue irritability (A.R. 557-58).  Plaintiff was
discharged from physical therapy on April 29, 2013, after
reporting that he did not feel any better (A.R. 816-17).

closer to the neuroforamen which Dr. Steinmann opined would not cause any irritation (A.R. 823).[7] Dr. Steinmann assessed status post anterior and posterior fusion at L5-S1 with a "fair to good result" (A.R. 823). Dr. Steinmann opined that Plaintiff had reached "maximum medical improvement," and released Plaintiff to return to work, limited to lifting no more than 15 pounds and no repetitive bending, stooping or climbing at unsafe heights (A.R. 824).

On October 11, 2013, Plaintiff went to the emergency room for back pain radiating to his left knee and was given pain medication (A.R. 668-69). Plaintiff went back to Dr. Steinmann on October 14, 2013, reporting that his symptoms were worse – he had constant severe low back pain with left leg pain and numbness (A.R. 826). On examination, Plaintiff again reportedly had limited range of lumbar motion and tenderness to palpation (A.R. 827). Dr. Steinmann indicated that the appropriate course would be "to observe and see how he does over time" (A.R. 827-28). Dr. Steinmann again limited Plaintiff to work lifting no more than 15 pounds with no repetitive bending and stooping or climbing at unsafe heights. Id.

On November 21, 2013, Dr. Steinmann ordered a new MRI to rule out adjacent segment deterioration after Plaintiff reported that his symptoms continued (A.R. 830-32). On December 30, 2013, Plaintiff's examination results were unchanged (A.R. 835). Dr. Steinmann stated

---

[7]     A June, 2013 lumbar spine CT scan had shown status post anterior and posterior fusion at L5-S1, lumbar spondylosis at L3-L4 and L4-L5, and a probable 4-millimeter disc protrusion at L4-L5 (A.R. 354-55).

that the new MRI showed solid arthrodesis at L5-S1 and degenerative
changes at L4-L5, for which he recommended that Plaintiff not consider
surgery at that time and instead pursue low impact aerobic
conditioning, activity modification, and an occupation that does not
require significant stress on Plaintiff's back (A.R. 835-36).[8] Dr.
Steinmann then limited Plaintiff to lifting no more than 30 pounds
(A.R. 836).

On April 18, 2014, Plaintiff reported increased constant low back
pain and left leg pain radiating to the knee (A.R. 838). Plaintiff
was strongly requesting that something be done for his back pain and
stated that, following his prior surgery, he had done "very well"
until his pain worsened in or around November of 2013 (A.R. 840).
Dr. Steinmann found Plaintiff was a candidate for L4-L5 fusion surgery
(A.R. 840). In May and July of 2014, Dr. Steinmann requested a second
opinion regarding the surgery and, in August of 2014, Plaintiff was
scheduled for surgery (A.R. 846, 908, 911).

On September 17, 2014, Plaintiff underwent a second fusion
surgery on Plaintiff's lumbar spine at L4-L5 by Drs. Vanderlinden and
///

---

[8]     A December, 2013 lumbar spine MRI showed status post
fusion at L5-S1, a 3-millimeter disc bulge at L3-L4 with mild
bilateral neural foraminal narrowing and bilateral facet joint
hypertrophy, a 4-millimeter retrolisthesis of L4 on L5 with a 4-
to 5-millimeter disc bulge at L4-L5 with moderate bilateral
neural foraminal narrowing and bilateral facet joint hypertrophy
with ligamentum flavum redundancy, and posterior bony spurring
extending into the bilateral foraminal zones at L5-S1 with
moderate bilateral neural foraminal narrowing and prominent
bilateral facet joint hypertrophy (A.R. 359).

Steinmann (A.R. 317, 680-99).[9]  As of two weeks following this
surgery, Plaintiff reportedly had full strength in his lower
extremities and intact sensation (A.R. 915).  Plaintiff was instructed
to continue to walk daily, and his temporary total disability was
continued (A.R. 915).  After eight weeks, Plaintiff reportedly was
doing well, happy with his surgery results and complained only of
stiffness and "low grade" pain (A.R. 919).  Plaintiff reportedly was
ambulating with a normal gait independently without an assistive
device (A.R. 919).  Dr. Steinmann referred Plaintiff for "aggressive"
rehabilitation with physical therapy three times a week for four
weeks, and Dr. Steinmann continued Plaintiff's temporary total
disability (A.R. 920).

On December 19, 2014, Plaintiff reported that his pain had gotten
better, characterized as a three on a scale of one to 10, but
Plaintiff said the pain was still aggravated by prolonged walking,
standing and sitting, and radiated down his left leg with numbness and
weakness (A.R. 922).  Plaintiff had not yet been approved for physical
therapy (A.R. 922).  Plaintiff again reportedly ambulated with a
normal gait, without an assistive device (A.R. 923).  On examination,
he had no tenderness to palpation and limited range of motion in the
lumbar spine due to stiffness and discomfort (A.R. 923-24).  Dr.
Steinmann released Plaintiff for "sedentary" work (A.R. 924).

///

///

---

[9]    A September 15, 2014 lumbar spine MRI showed
postsurgical changes with dorsal fusion of L5 and S1, and neural
foraminal stenosis at L4-L5 and L5-S1 (A.R. 360-61).

By January 26, 2015, Plaintiff reported that he had constant pain
in both hips radiating down his left leg with numbness and tingling
and a change in neurologic function (A.R. 926).  Plaintiff was due to
start physical therapy that week (A.R. 926).  Plaintiff reportedly was
ambulating with a cane, but was able to transfer from chair to
standing and to the examination table with apparent ease and without
apparent discomfort (A.R. 927).  Examination results were unchanged
(A.R. 927).  Dr. Steinmann prescribed 800 milligram ibuprofen and
continued Plaintiff's restriction to "sedentary" work (A.R. 928).

On February 23, 2015, Dr. Steinmann examined Plaintiff and
prepared a report re "maximum medical improvement" (A.R. 930-34, 996-
99).  Plaintiff complained of worsening constant low back pain
radiating to his left leg, with numbness not helped by physical
therapy (A.R. 931, 996; see also A.R. 1010-11 (physical therapy
records)).  Plaintiff rated his pain at four on a scale of one to 10
(A.R. 931, 996).  Plaintiff reportedly ambulated with a normal gait,
without an assistive device, but his transfers from chair to standing
and to the examination table were slow, with pain in the low back and
left hip (A.R. 931; but see A.R. 997 (reporting transfers "with ease"
and "no discomfort")).  On examination, Plaintiff had tenderness on
lumbosacral palpation and significantly reduced lumbar range of motion
(A.R. 931-32; but see A.R. 997 (reporting no tenderness on
palpation)).  Dr. Steinmann diagnosed status post anterior and
posterior fusion from L4 to the sacrum with a "fair" result and
declared Plaintiff "permanent and stationary" (A.R. 932, 998).
Plaintiff reportedly felt that his pain had improved since surgery but
also said that he still had significant limitations (A.R. 932).  Dr.

Steinmann encouraged aerobic conditioning (A.R. 932).  Dr. Steinmann opined that Plaintiff had reached maximum medical improvement and could compete on the open labor market, with restrictions from repetitive bending and stooping, lifting greater than 10 pounds, and working at heights or uneven walking (A.R. 932-33, 1007 (noting, "This patient is largely best treated with strictly sedentary work.")).

The record contains primary care physician treatment notes for various conditions thereafter (A.R. 1289-1331).  On July 7, 2015, Plaintiff reportedly presented to his primary care physician for removal of skin tags and a second opinion for his "fluctuating" "intermittent" back pain, after Dr. Steinmann had opined that Plaintiff reached maximum medical improvement and that physical therapy no longer was beneficial (A.R. 1320).  On examination, Plaintiff had moderately reduced range of motion in the lumbar spine (A.R. 1321).  Plaintiff was referred for orthopedic surgery and radiotherapy consults (A.R. 1322).  On September 9, 2015, Plaintiff complained of "occasional" worsening lower back pain, aggravated by lifting, lying/rest, rolling over in bed and sitting, with numbness in his left leg (A.R. 1328).  Plaintiff reportedly was using a cane and had tenderness and mildly reduced range of motion in the lumbar spine (A.R. 1329).  Plaintiff again was referred to an orthopedic surgeon and was also referred to pain medicine (A.R. 1330).  There are no follow up records from these referrals.

On September 15, 2015, Plaintiff went to the emergency room for back pain with radicular symptoms, reporting that his doctor no longer would prescribe hydrocodone long term (A.R. 460-63).  Plaintiff was

14

given a Morphine injection and prescribed a two-day supply of Norco
(A.R. 460-63).  On January 14, 2016, Plaintiff returned to the
emergency room for pain in his left upper quadrant and lower back
after a fall in the shower (A.R. 1041-54).  He was diagnosed with
abdominal pain and low back pain and prescribed Protonix (A.R. 1045).

C.    **Opinions of Consultative Examiner and State Agency**
      **Physicians**

Consultative examiner Dr. Vincent Bernabe reviewed a March, 2012
lumbar spine MRI and a February, 2013 abdomen x-ray, examined
Plaintiff and prepared a report dated November 20, 2014 (A.R. 942-46).
Dr. Bernabe's report occurred after Plaintiff's two surgeries but
before Dr. Steinmann's report re maximum medical improvement following
the second surgery (A.R. 942-46).  Plaintiff complained of sharp,
throbbing, burning low back pain exacerbated by prolonged sitting,
standing, walking, bending and lifting (A.R. 942-43).  Plaintiff was
using a cane for ambulation, wearing a brace and taking Norco (A.R.
942-43).  However, Plaintiff reportedly could walk without a cane,
with a slow deliberate pace (A.R. 943).  Dr. Bernabe opined that the
cane was not medically necessary (A.R. 943).  On examination,
Plaintiff had significant tenderness on lumbosacral palpation, muscle
spasm on the right side, limited range of motion and positive straight
leg raising (A.R. 943-45).  Dr. Bernabe diagnosed degenerative disc
disease of the lumbar spine, status post posterior lumbar fusion,
lumbar radiculitis and lumbar musculoligamentous strain (A.R. 945-46).
Dr. Bernabe opined that Plaintiff would be able to perform light work
with occasional pushing and pulling, walking on uneven terrain,

climbing ladders, working at heights, bending, crouching, stooping and crawling (A.R. 946).

State agency physicians reviewed the available records in January, April, July and August of 2015 and opined that Plaintiff had severe degenerative disc disease and an affective disorder (A.R. 69-75, 85-91). The state agency physicians opined that Plaintiff retains a residual functional capacity for light work with occasional lower extremity pushing and pulling, stair/ramp climbing, balancing, stooping, kneeling, crouching and crawling, no concentrated exposure to vibration or hazards, limited to simple repetitive tasks, "partially interact[ing]" with supervisors and co-workers and the public in a service capacity, making simple work-related decisions, adhering to basis safety rules, and adjusting to changes in routine in a typical non-public unskilled setting (A.R. 69-75, 85-91 (giving great weight to the opinions of Dr. Bernabe and "other weight" to the opinion of Dr. Steinmann that Plaintiff was limited to sedentary work)).

## II. The ALJ Materially Erred in the Evaluation of the Medical Evidence.

In assessing Plaintiff's residual functional capacity, the ALJ gave "some weight" to Dr. Steinmann's opinion that Plaintiff would be limited to no repetitive bending and stooping, but rejected Dr. Steinmann's opinion that Plaintiff would be limited to "sedentary work" (A.R. 17). The ALJ stated:

///

> [T]he record does not fully support a sedentary range of
> limitations . . . since other examinations after the
> claimant's surgeries including [Dr. Steinmann's] own
> contemporaneous clinical findings have shown greater ability
> that is more consistent with light restrictions. The
> claimant himself admits to being better than prior to his
> surgery, despite some residual mild to moderate discomfort
> [citing A.R. 822 (Plaintiff's report to Dr. Steinmann
> July 11, <u>2013</u> that he was "much better than he was before
> surgery but still has discomfort that precludes him from
> doing his normal activities")]. Even medical source
> statements provided by Dr. Steinmann himself included
> greater levels of functioning, such as greater levels of
> lifting that are more consistent with the record and given
> some weight as well [citing A.R. 824 (Dr. Steinmann's
> July 11, <u>2013</u> opinion that Plaintiff had reached maximum
> medical improvement with "ongoing low grade discomfort"
> following the <u>first</u> surgery, and was capable of work limited
> to lifting no more than 15 pounds)]. Dr. Steinmann failed
> to provide any explanation to why his later opinions show
> greater levels of limitations despite noted improvement by
> the claimant and objective findings, as well as no
> intervening or subsequent injuries.

(A.R. 17) (emphasis added).


A treating physician's conclusions "must be given substantial
weight." <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988); <u>see</u>

Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must
give sufficient weight to the subjective aspects of a doctor's
opinion. . . . This is especially true when the opinion is that of a
treating physician") (citation omitted); see also Garrison v. Colvin,
759 F.3d 995, 1012 (9th Cir. 2014) (discussing deference owed to the
opinions of treating and examining physicians). Even where the
treating physician's opinions are contradicted, as here, "if the ALJ
wishes to disregard the opinion[s] of the treating physician he . . .
must make findings setting forth specific, legitimate reasons for
doing so that are based on substantial evidence in the record."
Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation,
quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at
762 ("The ALJ may disregard the treating physician's opinion, but only
by setting forth specific, legitimate reasons for doing so, and this
decision must itself be based on substantial evidence") (citation and
quotations omitted).

The reasons the ALJ stated for rejecting Dr. Steinmann's opinion
do not comport with these authorities. An ALJ properly may discount a
treating physician's opinions that are in conflict with treatment
records or are unsupported by objective clinical findings. See
Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (conflict
between treating physician's assessment and the treating physician's
own clinical notes can justify rejection of assessment); Batson v.
Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may
discredit treating physicians' opinions that are conclusory, brief,
and unsupported by the record as a whole . . . or by objective medical
findings"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)

(treating physician's opinion properly rejected where physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly may reject treating physician's opinions that "were so extreme as to be implausible and were not supported by any findings made by any doctor . . . ."); 20 C.F.R. §§ 404.1527(c), 416.927(c) (factors to consider in weighing treating source opinion include the supportability of the opinion by medical signs and laboratory findings as well as the opinion's consistency with the record as a whole).

In the present case, however, no physician discerned any specific inconsistency between Dr. Steinmann's clinical findings and his opinion that, after Plaintiff had reached maximum medical improvement following the second surgery, Plaintiff was limited to sedentary work (i.e., lifting no more than 10 pounds). Plaintiff's condition plainly deteriorated after Dr. Steinmann's opinion that Plaintiff had reached maximum medical improvement from the first surgery. In fact, Dr. Steinmann ultimately recommended and performed a second surgery for Plaintiff's deteriorating back condition. As had happened following the first surgery, Plaintiff initially reported improvement, but later complained of worsening pain. After Plaintiff had reached maximum medical improvement following the second surgery, Dr. Steinmann opined in February of 2015 that Plaintiff was limited to lifting no more than 10 pounds.

If the ALJ thought that Dr. Steinman's February, 2015 opinion did not adequately explain the reasons for finding Plaintiff more limited

after the second surgery than after the first surgery, the ALJ should have inquired further of Dr. Steinmann. "The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty exists even when the claimant is represented by counsel." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); accord Garcia v. Commissioner, 768 F.3d 925, 930 (9th Cir. 2014); see also Sims v. Apfel, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . ."); Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (while it is a claimant's duty to provide the evidence to be used in making a residual functional capacity determination, "the ALJ should not be a mere umpire during disability proceedings") (citations and internal quotations omitted); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them. He could also have continued the hearing to augment the record.") (citations omitted).

The other physicians' opinions do not adequately support the ALJ's rejection of Dr. Steinmann's February, 2015 opinion. Dr. Bernabe's opinion predates the February, 2015 opinion and consequently does not even mention it. The state agency physicians also did not discuss specifically Dr. Steinmann's February, 2015 opinion. See A.R. 85 (summarizing Dr. Steinmann's records and noting only, "Multiple MSS

[medical source statements]; that mention P&S [permanent and stationary]; reserved for the Commissioner"). The ALJ's lay discernment of an asserted inconsistency between Dr. Steinmann's clinical findings and his opinion cannot constitute substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation and citation omitted); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).

Neither the ALJ nor this Court possesses the medical expertise to know whether the objective medical evidence is inconsistent with the limitations Dr. Steinmann found to exist. The ALJ's lay inferences from Plaintiff's reported periods of improvement following surgery, followed by periods of decline, cannot properly impugn the medical opinions in this case. Moreover, "[w]ith a degenerative disease, 'one would expect the Plaintiff's condition would worsen over time.'" Bullock v. Saul, 2019 WL 4034412, at *5 (E.D. Cal. Aug. 27, 2019) (quoting Geary v. Berryhill, 2018 WL 6182186, at *12 (E.D. Cal. Nov. 27, 2018)).

///
///
///
///
///

**III. The Court is Unable to Deem the ALJ's Errors Harmless; Remand for Further Administrative Proceedings is Appropriate.**

The Court is unable to conclude that the ALJ's errors were harmless. See Treichler v. Commissioner, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency"); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error "is harmless where it is inconsequential to the ultimate non-disability determination") (citations and quotations omitted); McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (error not harmless where "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error").

Remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. McLeod v. Astrue, 640 F.3d at 888; see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits"); Treichler v. Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759 F.3d at 1020 (court

will credit-as-true medical opinion evidence only where, <u>inter alia</u>, "the record has been fully developed and further administrative proceedings would serve no useful purpose"); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180-81 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record"). There remain significant unanswered questions in the present record, particularly with regard to: (1) the bases for the Dr. Steinmann's February, 2015 opinion; and (2) the issue of whether Plaintiff would be deemed disabled for all or part of the claimed disability period if Dr. Steinmann's opinions are credited.

**CONCLUSION**

For all of the foregoing reasons,[10] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.


LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: September 26, 2019.

_____
/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[10] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.